UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------
TAMMY J.,

                         Plaintiff,        <u>DECISION AND ORDER</u>
                                            1:21-CV-00107-GRJ

       v.

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
-----------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

     In November of 2017, Plaintiff Tammy J.[1] applied for Supplemental

Security Income benefits under the Social Security Act. The Commissioner

of Social Security denied the application.  Plaintiff, represented by Ny

Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action

seeking judicial review of the Commissioner's denial of benefits under 42

U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction

of a United States Magistrate Judge. (Docket No. 25).

     This case was referred to the undersigned on May 2, 2022.  Presently

pending are the parties' Motions for Judgment on the Pleadings under Rule

12 (c) of the Federal Rules of Civil Procedure, submitted via Joint

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil
Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court
Administration and Case Management of the Judicial Conference of the United States.

Stipulation. (Docket No. 30). For the following reasons, Plaintiff is granted

judgment on the pleadings, the Commissioner's decision is reversed, and

this case is remanded for further proceedings.

## I.  BACKGROUND

### A.    Administrative Proceedings

Plaintiff applied for benefits on November 8, 2017, alleging disability

beginning January 1, 2014. (T at 112, 333-62).[2]  Plaintiff's application was

denied initially and on reconsideration.  She requested a hearing before an

Administrative Law Judge ("ALJ").  A hearing was held on June 24, 2019,

before ALJ David Suna. (T at 34). Plaintiff appeared with an attorney and

testified. (T at 41-60). The ALJ also received testimony from Mitchell

Schmidt, a vocational expert. (T at 61-71).  A supplemental hearing was

held on April 13, 2020. (T at 77).  Plaintiff appeared with an attorney. (T at

77).  The ALJ received testimony from Dr. Kwock, a medical expert (T at

84-98), and Albert Sabella, a vocational expert. (T at 99-109).

### B.    ALJ's Decision

On May 22, 2020, the ALJ issued a decision denying the application

for benefits. (T at 7-29).  The ALJ found that Plaintiff had not engaged in

substantial gainful activity since November 8, 2017 (the date she applied

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 16

for benefits). (T at 12).  The ALJ concluded that Plaintiff's status post total right knee replacement; left knee osteoarthritis; opioid dependence in remission; depressive disorder; and anxiety disorder were severe impairments as defined under the Act. (T at 13).  The ALJ determined that Plaintiff's hypertension; dyslipidemia; lumbar degenerative disc disease; cervicalgia; and possible ganglion cyst were non-severe impairments. (T at 13).  The ALJ concluded that Plaintiff's hand pain and wrist pain were non-medically determinable impairments. (T at 13-14).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equals one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 14).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following limitations: no more than occasional operation of foot controls; stand/walk no more than 3 hours in an 8-hour workday; occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing or crawling; no kneeling or crouching; no exposure to hazards (unprotected heights, moving mechanical parts, operating a motor vehicle); limited to simple, routine tasks not at a production rate pace; no more than frequent interaction with supervisors

and co-workers; no more than occasional interaction with the public; and no more than occasional changes in the work setting. (T at 15-16).

The ALJ found that Plaintiff could not perform her past relevant work as a gas attendant. (T at 22).

However, considering Plaintiff's age (49 on the application date), education (limited, but able to communicate in English), work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (T at 23).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between November 8, 2017 (the application date) and May 28, 2020 (the date of the ALJ's decision). (T at 24).  On November 12, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-6).

C.    *Procedural History*

Plaintiff commenced this action, by and through her counsel, by filing a Complaint on January 6, 2021. (Docket No. 1).  On June 20, 2022, the parties, through counsel, filed a Joint Stipulation in lieu of separate briefs and in support of their respective motions for judgment on the pleadings. (Docket No. 30).

## II.  APPLICABLE LAW

*A.    Standard of Review*

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted.  *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.     *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without

considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec*., 994 F. Supp. 2d 496, 503

(S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v),

416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the

burden shifts to the Commissioner at step five. *See Green-Younger v.*

*Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner

determines whether claimant can perform work that exists in significant

numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101,

103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises two main arguments in support of her request for

reversal of the ALJ's decision.  First, Plaintiff argues that the ALJ's

assessment of the medical opinion evidence was flawed.  Second, she

contends that the ALJ erred in discounting her credibility.  This Court will address both arguments in turn.

A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.  Because Plaintiff's application for benefits was filed after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. *See* 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion,

with a specific explanation provided as to the consistency and supportability factors. *See* 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. *See* 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

### 1.    *Medical Opinion Evidence Regarding Physical Limitations*

Dr. Jonathan Lee, Plaintiff's treating orthopedist, completed a medical source statement in February of 2019, in which he opined that Plaintiff's experience of pain was severe enough to often interfere with her attention

and concentration; that Plaintiff was limited to 2 hours of sitting and 1 hour of standing/walking in an 8-hour workday; that Plaintiff could frequently lift/carry 6-10 pounds, but never more than that; that she could perform occasional balancing, but no stooping; and that Plaintiff was likely to be absent from work more than 3 times per month due to her impairments or treatment. (T at 1147).

Patricia Giurleo, a treating nurse practitioner, completed a medical source statement in May of 2018.  Ms. Giurleo opined that Plaintiff's experience of pain was severe enough to frequently interfere with her attention and concentration. (T at 1031).  She stated that Plaintiff could not sit for more than 1 hour during an 8-hour workday and was limited to standing/walking for 1 hour during an 8-hour workday. (T at 1032).  Ms. Giruelo opined that Plaintiff could lift/carry up to 5 pounds occasionally, but never more than that, and could perform no balancing or stooping. (T at 1033).  She stated that Plaintiff needed a cane or walker to ambulate on all surfaces and terrains. (T at 1034). Ms. Giruelo opined that Plaintiff was likely to be absent from work more than 3 times per month due to her impairments or treatment. (T at 1035).

Dr. John Fkiaras performed a consultative examination in January of 2018.  Dr. Fkiaras diagnosed bilateral knee pain, history of right knee

replacement, low back pain, left hand/wrist/forearm pain, possible ganglion cyst in the area of the right wrist, and history of drug abuse currently being treated with methadone. (T at 1024). He characterized Plaintiff's prognosis as "fair" and assessed moderate to marked limitation in the following domains: walking, climbing stairs, travelling, and standing. (T at 1024-25). Dr. Fkiaras opined that Plaintiff had moderate limitation with respect to sitting for prolonged periods. (T at 1024). He assessed marked limitation in Plaintiff's ability to engage in repetitive heavy lifting, carrying, pushing, pulling, squatting, kneeling, crouching, and performing tasks that require exposure to unprotected heights, driving, or operating machinery. (T at 1024-25).

The ALJ found the opinions of Dr. Lee, Dr. Fkiaras, and Ms. Giurieo unpersuasive. (T at 22).  After review the Court concludes that the ALJ's consideration of the medical opinion evidence is not supported by substantial evidence.  Here's why.

First, although their findings are not identical, the treating and examining medical sources all assessed physical limitations more significant than those included in the ALJ's RFC determination.  This is particularly the case regarding sitting and standing for prolonged periods. (T at 1024-25, 1032, 1147).  The ALJ gave no indication that he accounted

for the significant correspondence and consistency among the treating and
examining source opinions.  *See Shawn H. v. Comm'r of Soc. Sec*., No.
2:19-CV-113, 2020 WL 3969879, at \*7 (D. Vt. July 14, 2020)("Moreover,
the ALJ should have considered that the opinions of Stephens and Dr.
Lussier are consistent with each other.").

Second, the ALJ found the treating and examining assessments
inconsistent with "physical examination notes show[ing] that [Plaintiff] has
had consistent medical improvement." (T at 22).  However, while the record
does show some progress and improvement in response to treatment and
surgery (T at 887, 894, 895, 1190-91), the ALJ did not adequately account
for the well-documented persistence of pain and limitation, which is
consistent with the treating and examining source opinions. (T at 895,
1022-24, 1042, 1064, 1073, 1159, 1167, 1200, 1237, 1241, 1247).  *See
Nunez v. Kijakazi*, No. 1:20-CV-05907, 2022 WL 2872666, at \*2 (E.D.N.Y.
July 21, 2022)("The ALJ can neither substitute her own opinion for the
experts, nor cherry-pick the facts to support her conclusion.")(citing *Rosa v.
Callahan*, 168 F.3d 72, 79 (2d Cir. 1999)).

Third, the ALJ cited Plaintiff's ability to use public transportation and
perform activities of daily living as a reason for finding the treating and
examining source opinions unpersuasive. (T at 22).  The ALJ did not

explain how the ability to periodically use public transportation translated to the ability to perform a range of light work.  The ALJ also did not identify which activities of daily living he found inconsistent with the limitations assessed by the treating and examining physicians, particularly as they related to sitting and standing for prolonged periods. *See Cabrera v. Comm'r of Soc. Sec*., No. 16CIV4311ATJLC, 2017 WL 3686760, at *4 (S.D.N.Y. Aug. 25, 2017)("The ALJ had an obligation to better explain his decision to discount Dr. Tsinis' opinion based on Cabrera's alleged ability to perform daily activities, and to at least acknowledge the rigor of Cabrera's daily activities and the limitations she placed on those tasks."); *see also Molina v. Colvin*, 13-CV-4989, 2014 U.S. Dist. LEXIS 95998, 2014 WL 3445335, at *15 (S.D.N.Y. July 15, 2014) ("There is a big difference[] between an occasional walk or shopping trip and sitting/standing for an eight hour workday"); *Woodford v. Apfel*, 93 F. Supp.2d 521, 529 (S.D.N.Y. 2000) (explaining that a claimant's performance of basic self-care activities does not contradict assertions of disability).

The Court recognizes that the opinions of Dr. Saeed, a non-examining State Agency review physician (T at 119) and Dr. Kwock, the medical expert who testified at the hearing (T at 86-92), provide some support for the ALJ's decision.

Dr. Saeed opined that Plaintiff could stand/walk for 6 hours and sit for 6 hours in an 8-hour workday. (T at 119).  He further concluded that Plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently; could occasionally climb ladders, ropes, and scaffolds; and occasionally kneel, crouch, and crawl. (T at 119-20).  The ALJ found this opinion "generally persuasive." (T at 21).

Dr. Kwock reviewed the record and testified at the second administrative hearing. (T at 85-98).  Dr. Kwock opined that Plaintiff could perform light work as follows: she can lift/carry 10 pounds frequently and 20 pounds occasionally; sit for 8 hours in an 8-hour workday; stand and walk for 3 hours in an 8-hour workday; perform upper extremity activities (e.g., reaching, handling) with no limitation; frequently climb stairs and ramps; kneel and crawl occasionally; and she should have no more than occasional exposure to workplace hazards. (T at 90-91).  The ALJ found this testimony persuasive. (T at 22).

The problem with the ALJ's decision to find these non-examining opinions persuasive is that the ALJ's finding is not supported by adequate analysis or substantial evidence.  The non-examining source opinions represented a significant departure from the limitations assessed by the treating and examining medical sources, including the Commissioner's own

consultative examiner.  Under the circumstances, the ALJ was obliged to provide a detailed analysis, supported by evidentiary citations, to explain why he found the outlier opinions better supported and more consistent with the record.  *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021)("With respect to consistency, the ALJ should have addressed the fact that Dr. Ferrin's opinion was an outlier among the medical opinions of record.").

Moreover, Dr. Saeed, who is apparently a pediatrician (Docket No. 30, at p. 11, n.15), only reviewed a portion of the record, which did not include the assessments from the treating sources (Dr. Lee and Ms. Giurleo). *See, Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner.").

Notably, numerous district courts in the Second Circuit and elsewhere have questioned the quality of Dr. Kwock's opinions and reversed ALJ decisions relying on his testimony. *See Gearon v. Berryhill*, No. 17-CV-6675 (AMD), 2018 WL 6531594, at *4 (E.D.N.Y. Dec. 11, 2018); *Merkel v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 241, 250 (W.D.N.Y. 2018); *Carlsen v. Berryhill*, No. 16-CV-3538 (JFB), 2017 WL 4155333, at *13 (E.D.N.Y.

Sept. 19, 2017); *see also Hickman v. Saul*, No. CV 9:18-2033-RMG, 2019 WL 12363239, at *3 (D.S.C. Oct. 10, 2019)(collecting cases).

For the reasons discussed above, this Court concludes that the ALJ's decision to find the treating and examining source opinions unpersuasive is not supported by substantial evidence.

2.   *Medical Opinion Evidence Regarding Mental Limitations*

In May of 2018, Grace Adeola Adepoju, a treating nurse practitioner, completed a medical source statement regarding Plaintiff's mental limitations.  She noted diagnoses of anxiety and major depression, characterized by poor memory, sleep disturbance, mood disturbance, emotional lability, and substance dependence. (T at 1259).  Ms. Adepoju opined that Plaintiff would likely miss work about once a month due to her mental impairments or treatment. (T at 1261).  She stated that Plaintiff had moderate to marked limitation in her ability to understand, remember, and carry out instructions and with regard to her capacity to respond appropriately to supervision, co-workers, and work pressure in a work setting. (T at 1261).  She assessed moderate limitation in Plaintiff's activities of daily living, moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence, or pace. (T at 1262).

Ms. Adepoju completed another assessment in May of 2019.  In this report, she concluded that Plaintiff was likely to miss work more than 3 times per month due to her impairments or treatment. (T at 1268).  Ms. Adepoju repeated the finding of moderate to marked limitation in Plaintiff's ability to understand, remember, and carry out instructions, but found no limitation in her ability to respond appropriately to supervision, co-workers, and work pressure in a work setting. (T at 1269).

The ALJ found Ms. Adepoju's assessments of marked limitations and excessive absenteeism unpersuasive. (T at 22).  The ALJ concluded, however, that Plaintiff had significant impairment in her ability to perform mental demands of basic work activity.  The ALJ limited Plaintiff to work involving simple, routine work not at production rate pace, requiring no more than frequent interaction with supervisors and co-workers, no more than occasional interaction with the public, and no more than occasional changes in the work setting. (T at 15-16).  The Court concludes the ALJ's consideration of the evidence concerning Plaintiff's mental health impairments, including Ms. Adepoju's assessments, is supported by substantial evidence.

Dr. L. Serbonic, a non-examining State Agency review psychologist, reviewed a portion of the record and assessed mild limitation with respect

to Plaintiff's ability to understand, remember, or apply information; mild limitation in interacting with others; moderate limitation with regard to maintaining concentration, persistence, or pace; and moderate impairment in adapting or managing herself. (T at 117).  Dr. Serbonic opined that Plaintiff could perform unskilled work. (T at 121-23).

Dr. Seth Sebold performed a consultative psychiatric evaluation in January of 2018.  Plaintiff presented as mildly dysphoric, depressed, and dysthymic. (T at 1017).  She was appropriately oriented, with intact attention and concentration, mildly impaired memory, and good insight and judgment. (T at 1017).  Dr. Sebold assessed mild to no limitations in Plaintiff's ability to perform the mental demands of basic work activity. (T at 1018).

As highlighted by the ALJ, the contemporaneous mental health treatment notes were generally consistent with findings of mild to moderate limitation in most of the domains of mental functioning. (T at 22, 397-98, 1390, 1397, 1399, 1402-05, 1410).

The ALJ's conclusion that Plaintiff had mild to moderate mental impairments was supported by a reasonable reading of the record and the limitations set forth in the RFC adequately accounted for those impairments.  *See McIntyre v. Colvin*, 758 F.3d 146, 150-51 (2d Cir.

2014)(finding that ALJ appropriately accounted for moderate work-related psychiatric limitations by limiting the claimant to unskilled, low stress work involving limited contract with others); *see also Sanchez v. Saul*, No. 18CV12102 (PGG) (DF), 2020 WL 2951884, at *27 (S.D.N.Y. Jan. 13, 2020); *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *6 (W.D.N.Y. Sept. 20, 2017); *Sophie H. v. Saul*, No. 5:18-CV-375 (CFH), 2019 WL 3975455, at *7 (N.D.N.Y. Aug. 22, 2019).

For these reasons, the Court finds no reversible error in this aspect of the ALJ's decision.

### B.    Credibility

A claimant's subjective complaints of pain and limitation are "an important element in the adjudication of [social security] claims, and must be thoroughly considered in calculating the [RFC] of a claimant." *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010) (citation omitted); *see also* 20 C.F.R. § 416.929.

However, "the ALJ is … not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citations omitted). Rather, the ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of other evidence in the record." *Id*. (citation omitted); *see also Henningsen v.*

*Comm'r of Soc. Sec*., 111 F. Supp. 3d 250, 267 (E.D.N.Y. 2015) ("The ALJ retains discretion to assess the credibility of a claimant's testimony regarding disabling pain and 'to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant.'" (quoting *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979))).

The ALJ follows a two-step process in evaluating a claimant's credibility.  First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citation omitted).

Second, "the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." *Id*. (citation, alterations, and quotation marks omitted). The ALJ must "consider all of the available medical evidence, including a claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa v. Colvin*, No. 13-CV-3285, 2014 U.S. Dist. LEXIS 121156, at *36 (E.D.N.Y. Aug. 28, 2014) (citing *Whipple v. Astrue*, 479 F. App'x 367, 370-71 (2d Cir. 2012)).

If the claimant's allegations of pain and limitation are "not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry." *Meadors*, 370 F. App'x at 184.

This inquiry involves seven (7) factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

If the ALJ discounts the claimant's credibility, the ALJ "must explain the decision to reject a claimant's testimony "with sufficient specificity to enable the [reviewing] Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [the ALJ's] decision is supported by substantial evidence." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 280 (S.D.N.Y. 2010)(alterations in original, citations omitted).

In the present case, Plaintiff testified as follows: She stopped working due to knee problems. (T at 46).  Back pain and muscle spasms in her neck are also issues. (T at 48, 51).  She uses a cane, and occasionally a

walker, to ambulate. (T at 48).  Surgery helped, but did not resolve, her

right knee pain. (T at 50).  She navigates 50 to 60 stairs per day. (T at 48).

Sitting is limited to an hour or two during the day. (T at 51-52).  She could

be on her feet for one to two hours per day. (T at 52).  She cannot walk

even one long block and has difficulty stooping. (T at 53).  Lifting and

carrying is limited to about 5 pounds. (T at 53).  She suffers from

depression, anxiety, social phobia, and paranoia. (T at 55, 57).  Following

instructions is difficult. (T at 59).  She can perform basic household chores,

but does so slowly. (T at 53-54).

The ALJ found that Plaintiff's medically determinable impairments

could reasonably be expected to cause the alleged symptoms, but

concluded that her statements concerning the intensity, persistence, and

limiting effects of those symptoms were not fully credible. (T at 16).

The ALJ relied on his interpretation of the record, including the

medical opinion evidence, in reaching the decision to discount Plaintiff's

subjective complaints. (T at 16-22).  The Court finds that the ALJ must

revisit his analysis of Plaintiff's testimony regarding her physical limitations.

That testimony, in particular as it related to prolonged sitting, standing, and

walking, was supported by the assessments of Plaintiff's treating and

examining medical sources, including the Commissioner's own consultative

examiner.  For the reasons outlined above, the ALJ did not properly analyze those assessments which, in turn, impacted his consideration of Plaintiff's subjective complaints.  Reconsideration on remand is required.

The Court, however, finds no error with respect to the ALJ's consideration of Plaintiff's mental health symptoms.  As discussed above, the ALJ adequately accounted for the supported impairment in Plaintiff's ability to perform the mental demands of basic work activity through the limitations set forth in the RFC determination.  The same rationale applies to the ALJ's consideration of Plaintiff's testimony regarding her mental health symptoms.  This aspect of the ALJ's decision is sustained.

### C.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)).  Remand for further administrative proceedings is the appropriate remedy "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999); *see also Rhone v. Colvin*, No. 13-CV-5766 (CM)(RLE), 2014 U.S. Dist. LEXIS 180514, at *28 (S.D.N.Y. Nov. 6, 2014).

For the reasons discussed above, the Court finds that a remand is necessary for the ALJ to apply the proper legal standard to the assessments from Plaintiff's treating and examining medical source regarding her physical limitations.  After doing so, the ALJ should revisit and reconsider Plaintiff's subjective complaints of physical pain and limitation.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff is GRANTED judgment on the pleadings, the Commissioner's decision is REVERSED, and this case is REMANDED for further proceedings consistent with this Decision and Order. The Clerk is directed enter final judgment consistent with this decision and then close the file.

Dated: August 29, 2022                          *s/ Gary R. Jones*

                                                GARY R. JONES
                                                United States Magistrate Judge